STATE, AUGUSTUS T. VAN GIESEN, PROSECUTOR, v. THE INHABITANTS OF BLOOMFIELD AND ALEXANDER C. MARR, COLLECTOR.

1. The act of 1879, p. 337, is special and local, and therefore unconstitutional, so far as it relates to townships. The distinction necessary to mark a class for legislation must be something in the situation, or circumstances of the places embraced by the legislative enactment, which would render like powers, if granted, inappropriate to and unavailable for other like political districts.

2. Under the act of March 15th, 1881, (*Pamph. L., p.* 118,) it was competent to make a contract for the period of ten years, to commence after the lapse of a reasonable time, for the erection of the works necessary to a water supply.

3. To support a township tax for a water supply it is not necessary that every part of the township shall be supplied with water.

On *certiorari.*

Argued at June Term, 1885, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the plaintiff, *Riker & Riker.*

For the defendants, *Joseph L. Munn* and *Henry Young.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The question in this case is whether the assessment of taxes for the year 1884 in the township of Bloomfield against the prosecutor, for gas and water purposes, is valid.

In 1873 the legislature passed an act authorizing the township committee of the township of Bloomfield, in the county of Essex, to establish within the limits of said township one or more lamp districts, and to assess upon the persons and property within such lamp districts the cost of lighting the streets.

In 1877, in *State ,Baldwin, pros.,* v. *Fuller,* 10 *Vroom* 576, this court declared that a law conferring like powers upon the township committee of Montclair township was unconstitutional, for the reason that a taxing district could not be established less in area than the political district of which it is part.

This decision having been affirmed by the Court of Errors at November Term, 1878, (11 *Vroom* 615,) the Bloomfield act of 1873 became incapable of enforcement.   The necessity for further legislation led to the passage of the act of 1879, which has given rise to the present litigation in regard to the gas tax. *Pamph. L.* 1879, *p.* 337.

That act provides that "in all cases where the streets, or any of them, in any city or township of the state, have been or are lighted with gas or oil, under or in pursuance of any

authority conferred by the legislature upon such city or township, it shall hereafter be lawful for the common council or township committee of any such city or township, by resolution or ordinance, to cause any street or streets, and any public place, or any part or parts thereof, in such city or township, to be lighted with gas or otherwise, and for that purpose to erect the necessary apparatus, and to cause the annual expense thereof to be certified to the assessor or assessors of such city or township; and such annual expense shall thereupon be levied, assessed and collected from all the real and personal property in said city or township in the same manner as taxes for making and repairing roads or streets in said city or township, are assessed and collected."

The relator claims that this act is special and local, and therefore void.

It applies to any city or township of the state where the streets, or any of them, have been or are lighted with gas or oil, under or in pursuance of any legislative authority conferred upon such city or township.

It is conceded that the act of 1873 is a special and local law, designed to confer upon the township of Bloomfield an authority which has been granted to very few townships in the state. Neither Bloomfield township nor any other township in the state had the power to create a lamp district narrower in territorial limits than the entire township, and to cast the expense of lighting such district upon the whole of such political division. Such authority was sought to be established by the legislation in controversy. It was an effort to bestow upon one or two townships a power denied to all others. Unless the fact, therefore, that Bloomfield township possessed the power to light streets furnished a legal basis of classification for the purposes of legislation, the act of 1879 must be regarded as special and local. If this constitutes a substantial classification the constitutional amendments will offer a feeble barrier to many of the evils which the Chief Justice, in *Van Riper* v. *Parsons,* 11 *Vroom* 1, declares it was their purpose to repress.

He there says " the object of the constitutional regulation is manifest. It was to exterminate, root and branch, special and local legislation, and to substitute general law in the place of it in every instance in which such substitution could be effected."

Again he says : " Among these minor mischiefs was the practice of amending and supplementing municipal charters with a profusion which knew no bounds, the consequence being that the law of this department was kept in a state of constant flux and transition, so as to make the consolidation of it into a system by judicial decision an impossibility. These and others of a similar cast were the mischiefs that the constitutional supplement in question was intended to eradicate."

In *Tiger* v. *Morris Common Pleas,* 13 *Vroom* 631, the Court of Errors and Appeals declared that one of the chief objects in the recent change in the fundamental law was to bring into harmony the many local charters which had been previously granted by removing the great diversity in powers hitherto granted.

This purpose will be frustrated by establishing a system of classification which will individualize the political districts of the state, and serve to perpetuate the existing differences which mark them. Thereby, in every case where a political district had, prior to the adoption of the amendments, a grant of power peculiar to itself, it would be competent for the legislature to amplify, restrict, amend, change or modify such grant of power by legislation applicable exclusively to such locality.

The competency to legislate specially would be co-extensive and co-existent with the diversity which has heretofore prevailed in the legislation for local government.

The peculiarities and differences which the amendments were framed to eradicate would thus be successfully invoked to found a classification for law-making, by which they could be continued and magnified, and the constitutional limitation rendered impotent to restrain them.

Our courts have given examples of what would constitute a legitimate basis of classification. In *State* v. *Hammer,* 13

*Vroom* 435, 441, the Chief Justice says that a law giving to all cities in the state situated on tide-water the privilege of using such waters in connection with their sewers, would be valid. In such an enactment but a part of the cities of the state would be embraced, but the classification would be lawful and proper, inasmuch as the places embraced would be possessed of a characteristic distinct from those possessed by the excluded places, such characteristic being of such a nature as to afford a reasonable ground for such special legislation.

Another instance is given by the Chancellor in the same case before the Court of Errors and Appeals, 15 *Vroom* 667, 670. He there says " as for example, there are in certain cities officers such as superintendents of wharves, who exercise functions peculiar to such cities. There, if the legislature interferes at all in reference to such officers or the subjects of their functions, it must be by legislation not appropriate to other towns, and therefore, in such cases and to that extent, separate legislation would be proper."

It is thus apparent, I think, that in the judicial mind the distinction necessary to mark a class must be something in the situation or circumstances of the places embraced by the legislative enactment, which would render like powers, if granted, inappropriate to and unavailable for other townships. Within this rule of interpretation the validity of the law of 1879 cannot be vindicated. It does not appear why legislation enabling other townships to light lamp districts at the expense of the general tax levy would not be equally appropriate.

The right to legislate for cities as a class is not involved in this controversy. But the attempt to bestow upon one township, to the exclusion of others, special powers by associating it with cities, cannot be successful without overriding the barrier which has been erected against special legislation. The legislative act in this respect is without the force of law.

The parent act of 1873 being a special act, the legislation of 1879 engrafted upon it for the purpose of curing its infirmities must be of the same character. Construing the latter act to apply to all townships which at the time of its passage were

lighted or might thereafter be lighted by legislative authority, will not aid the defence. The objection still remains that the act is special and local in its application and effect, and will not be general until the legislature hereafter shall confer like power upon all townships.

If prior to 1879 power had been bestowed upon all townships to light streets, or if the act of 1879 in terms applied to every township in which the township committee might deem it necessary to light the streets, a different question would be presented.

Nor is it intended either to deny the right of the legislature to make density of population a basis of classification in granting power to light streets in townships, or the power of the township of Bloomfield under the act of 1873 to make of the entire township one lamp district, within which such lamp-posts may be erected and such lights maintained, by taxation upon the entire township, as the town committee, shall deem necessary. In this instance that course has not been pursued. The lamp district established is not co-extensive with the political district. The act of 1873 restricts the right of taxation to the limits of the lamp district. The act of 1879 being special and local and therefore inoperative, can furnish no warrant for assessing upon the entire township the cost of lighting the established lamp district.

The assessment for gas tax is illegal and should be set aside.

The water tax, from the burden of which the prosecutor seeks to be relieved, was levied under authority of an act passed March 15th, 1881. *Pamph. L., p.* 118. It provides that it shall be lawful for the city council, township committee, or other governing body of any municipal corporation in this state, to enter into and make a contract with any existing aqueduct board or water company for obtaining a water supply for the purpose of extinguishing fires, and for such other public uses and purposes as may be found necessary or convenient, and to assess the cost thereof upon the real and personal property within such municipal corporation, provided that no such

agreement shall be made for a longer period than ten years in one term.

Townships are municipal corporations within the meaning of this act. *Inhabitants of Princeton* v. *Mount*, 5 *Dutcher* 299; *Reid* v. *Wiley*, 17 *Vroom* 473.

In the contract with the water company the township committee stipulated for a supply of water for the public buildings, and also for private houses. This, the prosecutor insists, was an agreement for other than public purposes, and that therefore the contract is void. The act expressly authorizes provision to be made for such other public uses and purposes as may be found necessary or convenient. In Olmstead *v.* Proprietors of the Morris Aqueduct Company, the Court of Errors and Appeals held that the supplying of water to the inhabitants of Morristown constituted a public use. *Ante* *p.* 311.

The validity of the contract is also assailed because it was executed August 1st, 1883, and by its terms is made binding for a period of ten years from the 1st day of January, 1884. This is alleged to be in contravention of the provision of the act of 1881, that no contract shall be made for a longer period than ten years in any one term. Where, as in this case, it was necessary for the water company to construct works to furnish the requisite supply of water, it must have been within the contemplation of the law-maker that a reasonable time would be allowed for the contract to begin. It could not reasonably be supposed that any company would incur the expense incident to such an undertaking without a contract first executed with the municipality to be served. The substantial feature of the restriction is that no more than ten annual tax levies shall be contracted for at one time. The granted power has not in this respect been overstepped.

The last objection relied upon is that provision has not been made to supply every part of the township with water. To support this reason the plaintiff must maintain the proposition that the water tax cannot lawfully be imposed until every house within the township is supplied with water. I know

of no authority upon which such a doctrine can be supported. The contrary view was taken in *Hoey* v. *Collector of Ocean Township*, 10 *Vroom* 75. The burden of taxation cannot be adjusted with perfect equality. Whether or not the taxpayer has children to send to school, or a carriage to drive upon the road, he must pay his school tax and his road tax.

The water tax, in my judgment, should be affirmed.