THE STATE, EX REL. FRANCIS T. F. RANDOLPH, v. R. FRANK WOOD.

1. An act of the legislature providing for the election of one common councilman-at-large, in cities of less than ten thousand inhabitants, divided into not less than two nor more than three wards, and which now, by law, have twelve councilmen, is a special law regulating the internal affairs of cities, and unconstitutional. The three incidents on which a classification is attempted to be made are too unimportant and restrictive to form the basis for a general law.

2. The act entitled "An act concerning cities of the third class," approved February 20th, 1883, providing that in such cities the term of office

| | |
|---|---|
| 49 | 85 |
| 52 | 537 |
| 49 | 85 |
| 53 | 281 |
| 49 | 85 |
| 54 | 123 |
| 54 | 159 |
| 49 | 85 |
| 55 | 77 |
| 55 | 81 |
| 49 | 85 |
| 58 | 339 |
| 58 | 608 |
| 59 | 149 |
| 49 | 85 |
| 60 | 42 |
| 60 | 527 |
| 60 | 538 |
| 60 | 543 |
| 49 | 85 |
| 61 | 483 |
| 61 | 488 |
| 56e | 654 |
| 49 | 85 |
| 65 | 278 |
| 49 | 85 |
| 66 | 208 |

of councilman shall be for as many years as there are members in each ward, requiring the members to divide in classes, and directing the election of one member annually in each ward, *Held*, to be constitutional. The object of the law is sufficiently expressed in its title and the law not inappropriate to the class of cities to which it applies.

On information in nature of *quo warranto*.

Argued at November Term, 1885, before BEASLEY, CHIEF JUSTICE, and Justices MAGIE and KNAPP.

For the relator, *Mark R. Sooy.*

For the respondent, *Alfred Flanders.*

The opinion of the court was delivered by

KNAPP, J. This information, by leave granted to the relator, was filed for the purpose of trying the right of the respondent to hold and exercise the office of member of the common council of the city of Burlington. Like proceedings were instituted against Joseph R. Ivins, J. Frank Budd, Decatur Abdell and Samuel E. Lippincott, challenging the title of each to a similar office in that city. The several informations were prosecuted upon the same grounds, and each of the respondents pleaded the same matters in vindication of their questioned right. The pleas were demurred to, and the questions presented in the briefs of counsel are upon the constitutionality of two legislative acts set out in the schedule of title presented in respondent's pleas.

The first-mentioned act was passed March 4th, 1878, entitled "A further act concerning cities." It enacted that "the common council of any city of less than ten thousand inhabitants, and divided into not less than two nor more than three wards, which may now, by law, consist of twelve members, shall hereafter consist of thirteen members, who shall be elected an equal number from each ward and one member at large for such city, at the next annual city election therein held after the passage of this act. The member at large shall be an

elector and resident of said city and shall hold his office for the term of two years, and at the expiration thereof, and every two years thereafter, a member at large shall be so elected ; the members so elected from each ward shall be electors and residents of their respective wards, and shall, at the first meeting of said common council after their election, divide themselves into two classes by lot, the first class to hold the office for the term of one year, and the second class for the term of two years."

The second was an act entitled "An act concerning cities of the third class," approved February 20th, 1883, which provided as follows :

First. That in cities of the third class the terms of office of members of the common council or other legislative body shall be for as many years as there are councilmen or members of such legislative body from each ward, and that at each annual municipal election after the next succeeding election one member of the common council or other legislative body shall be elected from each ward.

Second. That at the next succeeding municipal election the members of the common council or other legislative body shall be elected as heretofore, and at the second meeting of such common council then elected, the members from each ward shall by lot divide themselves into classes, so that the term of office of one member from each ward shall expire in each succeeding year.

The respondents claim to have been regularly elected at a charter election in 1882, and that while in office by such election, their several terms were extended by the legislation of 1883.

Since the adoption of the amendments to our state constitution in 1875, legislation regulating the internal affairs of towns and counties under the requirements of article IV., section 7, paragraph 11, of the constitution, must be by general laws, private, local or special laws for municipal government no longer being within legislative discretion.

The cases in our books in exposition of the constitutional

design, touching this particular subject, have become numerous, and it would seem at this day unnecessary to do more than cite the more important of them. *Van Riper* v. *Parsons*, 11 *Vroom* 1, 123; *State* v. *Hammer*, 13 *Vroom* 435; *Anderson* v. *Trenton*, 13 *Vroom* 486; *Zeigler* v. *Gaddis*, 15 *Vroom* 363; *Skinner* v. *Collector*, 13 *Vroom* 407; *Coutieri* v. *New Brunswick*, 15 *Vroom* 58.

Disclaiming all intent to further define what is a general law, it will serve the present purpose to say that under these adjudications a law is to be regarded as general when its provisions apply to all objects of legislation, distinguished alike by qualities and attributes which necessitate the legislation, or to which the enactment has manifest relation. Such law must embrace all and exclude none whose condition and wants render such legislation equally necessary or appropriate to them as a class.

The act of 1878, gauged by the rules which have heretofore been adopted by our courts as the proper basis of classification, seems to me to have chosen characteristics and incidents as marking a distinct class of too special, restrictive and unimportant a character to give to the enactment the quality of a general law. The law had several purposes; these were to give to the corporations which it provided for a councilman, to be elected at large in the city; an election of an equal number of the other councilmen in each of the wards; a division of the members elected in each ward in two classes, one to hold for one year and the other for two years, and thereafter an election of each member for a term of two years. But the law was applicable only in such cities as had less than ten thousand inhabitants; such as were divided into not less than two nor more than three wards, and which, at the passage of the act, had by law twelve members of council. A city with these several incidents was permitted to have a thirteenth member, to be elected at large, the others to be chosen equally in wards, to divide in classes and hold a two years' term.

Legislation prescribing the number of members which should

compose the common council in cities of less than ten thousand inhabitants, and a different number in larger cities would be unobjectionable. Representation bearing some proportion to the population would not be unreasonable ; so, too, a legislative direction of the number of wards into which cities of different populations should be divided, would not, as it seems to me, differ materially from the illustration of the number of polling districts used in Van Riper *v.* Parsons.

Plausible reasons could be assigned for establishing different terms of office in large and small cities, but I cannot perceive any relation between the three combined incidents out of which a class is constituted, and the legislation following upon it. Why should a city of two or three wards with a given population have more members in its common council, than one with four or five wards with the same population, or one not divided into wards? Nor am I able to perceive how this legislation, if a public necessity for small cities, should be limited to those then having twelve members of common council and those having a less number or a greater, or thereafter to have twelve, be excluded from its advantages. Under the three conditions which form the basis for the class, Burlington was probably the only one included of the small cities in the state.

But the case does not necessarily turn on this law of 1878. No member of council, whose office is sought to be impeached in these proceedings must of necessity rest his title upon that act. We have to consider the effect of the act of February 20th, 1883, in connection with legislation prior to the adoption of the constitutional amendments. This legislation of 1883 was applied to " cities of the third class," and extended the term of office of members of the common council for as many years as there are members from each ward. It provided for so classifying members that the term of one member from each ward should expire in each succeeding year ; that at the election then next succeeding the passage of the act, the common council should be elected as *theretofore.*

Under the charter of the city, approved March 4th, 1851,

and the supplements thereto, one approved March 26th, 1863, the other March 20th, 1871, the city of Burlington was entitled to twelve members with a term of office of two years' duration, and so classed that the term of one-half the members expired each year; the time of the election was the third Tuesday in March of each year.

The plea shows that at the annual charter election in 1882, each of the respondents was elected for the term of two years—Wood and Ivins from the first ward, Budd, Abdell and Lippincott from the second ward—and were duly sworn into office. At the charter election of 1883, three members were chosen in each of the wards to take the places of those whose terms were about to expire. On the 5th of February, 1884, the persons elected in the respective wards divided themselves into classes. This was not at the second meeting of the council held after the election, but that provision of the act is regarded as directory. In such allotment, Wood drew a term of four years, Ivins of six years, in the first ward; Lippincott two years, Abdell five years and Budd six years, in the second ward.

Now it is clear that irrespective of the legislation here sought to be impeached, the city was entitled to have twelve members of the council, and to elect six each year for a term of two years.

The principal object of the act of February 20th, 1883, was to so adjust the terms of office of members of the common councils in cities affected by it, that one member should be elected in each ward each year.

Several objections are made to this legislation: that the object of the law is not sufficiently expressed in its title; that being a regulation of the internal affairs of cities, it is special and local; that if a general law, it embraces provisions of a private, special or local character; that it provides that an existing law shall be deemed a part of the act without inserting such law in the act. The title is, "An act concerning cities of the third class." It refers to a classification of cities made by the legislature

Randolph v. Wood.

in 1882, and from the title it would be inferred that its object was to effect some general legislation in respect to that class of cities. Now, while a more specific statement of the object of the act might be desirable and more closely in accord with the constitutional provision, yet the practice in this state of employing general titles in public laws regulating municipal government has come to be so established that we ought not, on this ground, to hold the act invalid. The conclusions in State *v.* Town of Union justify this result. The second objection, that the law is special and local, rests upon the ground that its operation is limited to cities of the third class, those having a population of less than twelve thousand. No question is raised by this case on the validity of classification of cities upon the basis of population for general purposes of government. The office of the Classification act is here simply to designate the cities to which the legislation is intended to apply. The question here is whether, for the purpose of this legislation enlarging the terms of office of councilmen, smallness of population may not be a substantial and sufficiently important ground to distinguish such communities from the great cities of this state? May it not be justly believed by the legislature that in small cities the duties of such office are measurably small, not sufficient of themselves to constitute an employment, but rather calculated to interfere with other callings; that these offices in small cities are avoided, not sought for by proper men, and that unless the duty which election to public office enforces is imposed for a considerable time, competent and experienced service is not likely to be obtained, and that in this larger cities differ. Frequent selections of men by the electors where public interests to be cared for are meagre may justly be regarded as an unnecessary and dispensable public burthen. If these or other considerations justify the drawing of some line of demarkation between the larger and the smaller aggregations of people, it is for the legislature to say where that line shall be placed. I am not prepared to say that the selection of the smaller municipalities from the whole, as the objects to which this legislation shall

Randolph v. Wood.

apply, is so inappropriate that we may deny to the legislation based upon it the quality of a general law. But it is objected that under the ruling of *Borough of Hightstown* v. *Glenn*, 18 *Vroom* 105, the act is special in excluding from its operation boroughs with similar conditions. Upon this point it is sufficient to say that the case of *Fitzgerald* v. *New Brunswick*, 18 *Vroom* 479, the same case subsequently approved in the Court of Errors, established the constitutionality of a classification of cities for the purposes of legislation of this character. But it is further claimed that this legislation is wanting in generality even as applied to the cities to which it relates, for the reason that under its operations there may, and probably will be, non-uniformity in the terms of office in different wards in different cities or in the same city. But I think these are rather incidents to the operation of the rule adopted which address themselves to the wisdom of the scheme for measuring the term, than to the constitutionality of the law. The design of the legislature and the scheme adopted was the election of one member only in each ward at each annual election. In doing this it may be that wards in cities differ in the numbers to be chosen from them, and this will necessarily make a difference in the term. But I see no other way in which the principal object of the act, namely, the selection of one in each year can be accomplished unless the legislature shall go farther and declare that a certain number shall be selected from each ward in all such cities embraced in the class. This they may do, but have not done by this law.

Again, the act is said to be special, being applicable only in cities having wards. If this objection were valid it does not appear in the case that there are such cities within this class not divided into wards. No such allegation exists in the pleadings, and we are not, I think, to assume it, especially since there stands upon the statute book a law antedating the one in question, empowering and possibly directing all cities of the state to divide their territory into wards.

The next objection is that the law violates paragraph 4, section 7, article IV. of the constitution, which provides

Randolph v. Wood.

that no general law shall embrace any provision of a private, special or local character. This objection is predicated upon that provision in the act which enacts that at the next succeeding municipal election "members of the common council shall be elected as heretofore." This assumes that the elections were held in virtue of the provisions of the before-mentioned act of March 4th, 1878. As to this and the other objection based upon the same clause in the act, I think this law can be rejected altogether without affecting this case, therefore it is unnecessary to discuss these objections; I think it a mistake to suppose that the election of the respondents depends upon any provision in the law of 1878. That law made no change that is important to us in the number of the common council, in the times of election or in the terms for which they should hold office; all these were legislated for in the charter and its supplements. As to the elections in 1882 and thereafter, they were in accordance with the requirements of the charter in all respects, except that under the charter the common council were elected at large, while these elections were held in wards. But as I think there was clear authority for that in virtue of the provisions of the act of March 22d, 1881 (*Pamph. L., p.* 175), entitled "An act relating to the division of certain cities in this state into wards," which provided that at the city or charter elections to be held in any city after a division thereof into wards, an equal number of members of the common council or other governing board or body shall be elected from each of the said wards. This law, as I interpret it, was applicable to and controlled the elections in the city of Burlington.

From these conclusions it would follow that the relators are properly in office if the legislature had power to extend the terms of those who were elected in 1884. The power of the legislature in this respect is not denied or questioned.

There should be judgment, therefore, for the respondents.