HALL v. BELL COUNTY et al.

(Court of Civil Appeals of Texas. Austin.
April 19, 1911. Rehearing Denied
May 31, 1911.)

1. STATUTES (§ 100*)—SPECIAL LAWS—REGU-
LATING COUNTY AFFAIRS—"REGULATING."

Const. art. 3, § 56, prohibits the Legis-
lature from passing any local or special law
regulating the affairs of counties, and declares
that no local or special laws shall be passed
where a general law can be made applicable.
Acts 29th Leg. c. 161, as amended by Acts 30th
Leg. c. 168, created the office of county auditor
in all counties having a population of 40,000,
or containing a city with 25,000 inhabitants,
and prescribed the duties of such auditor, giving
him general supervision over the accounts,
books, etc., of all county officers having au-
thority to receive money on behalf of the
county, etc. B. county having the requisite
population, plaintiff was appointed auditor
therefor, and served until after the passage of
Acts 31st Leg. c. 120, on April 1, 1909, amend-
ing the prior act and exempting B. county by
name from the provisions thereof. Held, that
the word "regulating," as used in the constitu-
tional provision, should not be given a narrow
or technical signification, and that the act
establishing the office of county auditor was an
act regulating county affairs within such sec-
tion, and hence the act amending the same by
exempting B. county was a special or local
law regulating county affairs and was therefore
unconstitutional.

[Ed. Note.—For other cases, see Statutes,
Cent. Dig. § 112; Dec. Dig. § 100.*

For other definitions, see Words and Phrases,
vol. 7, pp. 6041–6047; vol. 8, p. 7782.]

2. STATUTES (§ 77*) — "LOCAL OR SPECIAL
LAW."

A "local or special law," within the con-
stitutional prohibition against the passage of
such laws, is one which relates to particular
persons or things of the same class (citing
Words and Phrases, vol. 5, p. 4208; vol. 7, p.
6577).

[Ed. Note.—For other cases, see Statutes,
Cent. Dig. §§ 79–82; Dec. Dig. § 77.*]

Appeal from District Court, Bell County;
John D. Robinson, Judge.

Petition by W. E. Hall against Bell Coun-
ty and others to compel payment of plain-
tiff's salary as county auditor. From an or-
der sustaining a general demurrer to the
petition, plaintiff appeals. Reversed and re-
manded.

W. S. Banks, for appellant. A. L. Curtis,
for appellees.

KEY, C. J. The Twenty-Ninth Legisla-
ture passed a law (Laws 1905, c. 161), which
was amended by the Thirtieth Legislature
(Laws 1907, c. 168), and which, as amend-
ed, created the office of county auditor in
all counties of this state having a population
of 40,000 inhabitants, or containing a city
with 25,000 inhabitants. Bell county having
the requisite population, W. E. Hall was ap-
pointed auditor for that county. Thereafter,
on April 1, 1909, the Thirty-First Legislature
passed a law (Laws 1909, c. 120) exempting
Bell county by name from the provisions of
the former law under which Hall had been

appointed county auditor; and in December,
1909, he brought this suit against Bell coun-
ty, its county judge, and the several mem-
bers of its commissioners' court, seeking to
compel them to pay his salary and permit
him to discharge the duties of county auditor.
The trial court sustained a general demurrer
to his petition, and the plaintiff has ap-
pealed.

[1] The only question for decision is the
constitutionality of the act of the Thirty-
First Legislature exempting Bell county from
the former law creating the office of county
auditor. In a well-prepared and helpful
brief it is contended on behalf of appellant
that the act assailed is unconstitutional be-
cause it is a special law enacted without
publication of notice, as required by the
Constitution, and regulating the affairs of a
county, which the Constitution declares
shall not be done by local or special law. It
is also contended that the same result could
have been accomplished by the enactment of
a general law; and that, for that reason, the
statute in question is unconstitutional.

Section 56 of article 3 of our state Consti-
tution specifies a large number of subjects
upon which it is declared that the Legisla-
ture shall not, except as otherwise provided
in the Constitution, pass any local or special
law, and one of the specifications referred is
as follows: "Regulating the affairs of coun-
ties, cities, towns, ward or school districts."
And it is also provided in the same section
that no local or special law shall be passed
where a general law can be made applicable.
There is also a proviso declaring that the
Legislature is not prohibited from passing
special laws for the preservation of the
game and fish of this state in certain locali-
ties. Section 57 declares that no special
laws shall be passed unless notice of the in-
tention to apply therefor shall have been
published in the manner therein prescribed.
Whether or not the latter provision and the
one prohibiting the passage of a local or
special law where a general law can be made
applicable are mandatory, in the sense that
the courts may declare a statute unconsti-
tutional and invalid on account of those pro-
visions, is a question upon which there is
conflict of authority. In Beyman v. Black,
47 Tex. 558, our Supreme Court said: "Even
if the law could be regarded as a local or
special act, its passage would be taken as a
judgment of the Legislature that the case
was not one which could be provided for by
a general law, and their decision is conclu-
sive of the question." But counsel for ap-
pellant has pointed out in his brief that that
case arose under the Constitution of 1869,
as amended in 1873, which read: "The Leg-
islature shall pass general laws providing
for the cases before enumerated in this sec-
tion, and for all other cases which in its

judgment may be provided by general law."

So, in the case then before the court, it would seem that the constitutional provision then in force remitted the entire matter to the judgment of the Legislature. However, in the case at bar it is not deemed necessary to determine that point, nor the one relating to notice of intention to apply for the enactment of the statute, for the reason that we sustain appellant's contention that the act of 1909, exempting Bell county from the operation of the former statute, is a local or special law regulating the affairs of a county, and therefore prohibited by section 56 of article 3 of the Constitution. In reaching that conclusion we have kept in mind the well-settled rule that, within the domain of state affairs, state Legislatures possess plenary powers, except where restricted by the federal or state Constitution; and that, in determining the validity of state legislation, it is not necessary to search for a constitutional provision which authorizes the particular legislation, but rather for one which prohibits it; and, unless it appears with reasonable certainty that such legislation is violative of some constitutional provision, it should not be declared invalid. Nor have we overlooked the rule which declares that, if reasonable doubt exists as to the constitutionality of a statute, such doubt will be resolved in favor of its validity. But, notwithstanding these wholesome rules, this court feels compelled to hold that the statute in question contravenes and violates the constitutional provision referred to.

[2] It is conceded that much conflict of authority exists upon the question of what constitutes a local or special law, and, after a satisfactory rule has been adopted, cases may arise in which it may be difficult to determine whether the particular law is a local or special law or a general law. Well-prepared synopses of the leading cases upon the subject can be found in that valuable contribution to legal literature, known as "Words & Phrases Judicially Defined," vol. 5, p. 4208, and vol. 7, p. 6577. A leading case therein cited is Clark v. Finley, 93 Tex. 171, 54 S. W. 343, where our own Supreme Court, in an able opinion by Chief Justice Gaines, dealt with the question of what constitutes general and special legislation. In its most important provisions, by its own terms, the act then under consideration did not apply to counties in which the vote at the last election for president was less than 3,000, and for that reason it was vigorously assailed upon the theory that it was a local or special law. The Supreme Court sustained the validity of the law, and in the course of its opinion used the following language, which is more or less applicable to this case:

"A law is not special because it does not apply to all persons or things alike. Indeed, most of our laws apply to some one or more classes of persons or of things and exclude all others. Such are laws as to the rights of infants, married women, corporations, carriers, etc. Indeed, it is perhaps the exception when a statute is found which applies to every person or thing alike. Hence it cannot be that the statute under consideration is special merely because it is made to operate in some counties of the state and not in others. The definition of a general law, as distinguished from a special law, given by the Supreme Court of Pennsylvania in the case of Wheeler v. Philadelphia, 77 Pa. 338, and approved by the Supreme Court of Missouri, is perhaps as accurate as any that has been given. State v. Tolle, 71 Mo. 645. The court in the former case say: 'Without entering at large upon the discussion of what is here meant by a "local or special law," it is sufficient to say that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition.' The law in question is applicable to every county of the designated class. Now we do not propose to be led off into an extended discussion as to what is a proper class for the application of a general law. The tendency of the recent decisions upon the subject, as it seems to us, is to drift into refinements that are rather more specious than profitable. It is said in some of the cases that the classification must be reasonable, in others that it must not be unreasonable or arbitrary, etc. If it is meant by that that the Legislature cannot evade the prohibition of the Constitution as to special laws by making a law applicable to a pretended class which is, in fact, no class, we concur in the proposition. Such was the law passed upon in the case of Commonwealth v. Patton, 88 Pa. 258. That statute was made applicable to all counties in which there was a population of more than 60,000 and an incorporated city with a population exceeding 8,000 'situate at a distance from the county seat of more than 27 miles by the usually traveled public road.' There was but one city in the state which came within the pretended class. The court held this was a covert attempt at special legislation, and that the act was a nullity. It seems that in Pennsylvania there has been a studied and constant effort by the Legislature to evade the constitutional requirement of that state as to local and special legislation, and that the Supreme Court of that state has found it necessary to repress it with a strong hand. In so far as the courts which undertake to define the basis upon which the classification must rest hold that the Legislature cannot, by a pretended classification, evade a constitutional restriction, we fully concur with them. But if they hold that a classification which does not manifest a purpose to evade the Constitution is not sufficient to

support a statute as a general law, merely because in the court's opinion the classification is unreasonable, we are not prepared to concur. To what class or classes of persons or things a statute should apply is, as a general rule, a legislative question. When the intent of the Legislature is clear, the policy of the law is a matter which does not concern the courts. A Legislature may reach the conclusion that the compensation of certain officers in certain counties of the state is excessive, while in others it is not more than enough. By the reduction of the fees of office throughout the state, they may correct the evil in those in which the compensation is too great; but they will probably inflict a greater evil by making the compensation too small in all the others. In such a case, it becomes necessary to make the law applicable to some and not to all. There must be a classification. That classification may be. either by population or by taxable values. One Legislature might do as the Legislature of Texas did—make the classification by population. Another as was done by the Legislature of Arizona, might make the taxable values of the respective counties the basis of the classification. Shall the courts inquire which is correct? Can they say that the work of an officer is not in some degree proportionate to the population of his county? On the other hand, can they say that the more the property of a county, the more the crime? To ask these questions is to make it apparent that they are questions of policy, determinable by the political department of the government, and not questions the determination of which by the Legislature is subject to review by the courts. Therefore, should we adopt the rule that, in order to make an act a general law, the classification adopted should be reasonable, we should still be constrained to hold the statute in question a general law and valid under our . Constitution, for we cannot say that the classification is .unreasonable. It may be, as urged in the argument, that there are counties in the class to which the law is made applicable, the population of which very slightly exceeds that of other counties which are without it; and that it seems unreasonable to make a discrimination upon so slight a difference. To this the answer is the line must be drawn somewhere, and that a similar duty would probably result if the classification were made upon any other basis. Exact equality in such matters, however desirable, is practically unattainable.

"Nor do we think the act in question can be considered a 'local law' within the meaning of the term as used in the provision of the Constitution under consideration. We have found no very satisfactory definition of a 'local law.' But it seems to us that it is one the operation of which is confined to a fixed part of the territory of the state. It is plain from the reading of the statute in question that it was not contemplated that it should have effect in every county of the state. While by the determination of an extrinsic fact its operation in the main may be restricted to a minority of the counties in the state, still it applies generally to the whole state. Besides, the territory is not fixed, but is subject to change, according to the increase or decrease of the population of the respective counties as may appear by the the vote. And, again, it is held that a statute, although its enforcement be restricted to a fixed locality, is not local in its character, if persons or things throughout the state be affected by it. Williams v. People, 24 N. Y. 405; Healey v. Dudley, 5 Lans. [N. Y.] 115.

"But holding, as we do, that, as to the question before us, there is no material difference whether the classification be by population or by the taxable values of the counties, we have high authority that a statute of the character of that under consideration is neither a special nor a local law. An act of Congress prohibited the Legislatures of the territories of the United States from passing local or special laws in terms similar to those employed in section 56 of article 3 of our Constitution. The territory of Arizona passed a statute, which fixed the compensation of the county officers at different sums, according to a classification of. the counties based on the assessed value of property. In Harwood v. Wentworth, 162 U. S. 547, 16 Sup. Ct. 890, 40 L. Ed. 1069, the validity of the act was attacked upon. the ground that it was a local or special act and was, as such, prohibited by the act of Congress. The act was held valid, and in disposing of the question the court say : 'We are of the opinion that the territorial act is not a local or special law within the meaning of the act of Congress. It is true that the practical effect of the former is to establish higher salaries for the particular officers named, in some counties, than for the same class of officers in other counties. But that does not make it a local or special law. The act is general in its operation; it applies to all counties in the territory; it prescribes a rule for the stated compensation of certain public officers; no other of the classes named is exempted from its operation; and there is such a relation between the salaries fixed for each class of counties, and the equalized assessed valuation of property in them, respectively, as to show that the act is not local and special in any just sense."

According to that decision and the weight of authority in other jurisdictions, the act of the Twenty-Ninth Legislature, as amended by the act of the Thirtieth Legislature, creating the office of county auditors in such counties in this state as have a population of 40,000 inhabitants or over, or have therein a city with a population of 25,000 or more, is a general law, and therefore constitutional and valid; and the act of the

Thirty-First Legislature, approved April 1, 1909, exempting Bell county from the operation of the former statute, is a local or special law and is prohibited by the Constitution, if its effect is to regulate the affairs of that county. We hold that the latter statute is a local or special law for reasons stated by Chief Justice Gaines in the case cited, as will be shown in considering whether or not that statute is a law regulating the affairs of Bell county. In determining the latter question it is necessary to consider the terms of the statute from which the act in question purports to exempt Bell county. That statute, after creating the office of county auditor in the class of counties referred to, and providing for his appointment and qualification, reads as follows:

"Sec. 5. The auditor shall, at the expense of the county provide himself with all necessary ledgers, books, records, blanks and stationery, and shall also have the power to appoint additional clerical help when needed, with the consent of the county judge or commissioners' court.

"Sec. 6. It shall be the duty of the auditor to have a general oversight of all the books and records of all the officers of the county, district or state, who are now or who may hereafter be authorized or required by law to receive or collect any money, funds, fees or other property for the use of or belonging to the county. He shall have continual access to and shall examine all the books, accounts, reports, vouchers and other records of any of the officers, and also the orders of the commissioners' court relating to the finances of the county. He shall at least in each quarter check the books and examine all the reports of the tax collector, the treasurer and all other officers, in detail, verifying the footings and correctness of same, and shall stamp his approval thereon, or note any differences, errors or discrepancies. All reports required under article 840, Revised Statutes, shall also be carefully examined and reported on by him.

"Sec. 7. It shall be the duty of the auditor, without giving any notice beforehand, to examine fully into the condition of, or to inspect and count the cash in the hands of the county treasurer, or in the bank in which he may have placed same for safe keeping, not less than once each quarter, and oftener as desired. He shall see that the law is strictly enforced and that all balances to the credit of the various funds are actually on hand in cash. He shall fully investigate and see that none of said funds are invested in any manner except as the law may otherwise authorize.

"Sec. 8. He shall prescribe and prepare the forms to be used by all persons in the collection of county revenues, funds, fees and all other moneys; and the mode and manner of keeping and stating their accounts, and the time, mode and manner of making their reports to the auditor; also the mode and manner of making their annual report of office fees collected and disbursed, and the amount refunded to the county in excess of those allowed under the general fee bill act. He shall have the power to adopt and enforce such regulations, not inconsistent with the Constitution and laws as he may deem essential to the speedy and proper collection, checking and accounting of the revenues and other funds and fees belonging to the county.

"Sec. 9. It shall be his duty to keep an account with each and every person named in the preceding sections, and in doing so shall relieve the county clerk of keeping the finance ledger required in article 824, Revised Statutes. He shall require all persons who shall have received any moneys belonging to the county, or having the disposition or management of any property of the county, to render statements to him. His books shall show the detailed items of the indebtedness against all of said officers and the manner of discharging same. He shall make tabulated reports of said funds and accounts for each regular meeting of the commissioners' court. He shall keep a general set of books, which shall show all of the transactions of the county, relating to accounts, contracts, indebtedness of the county and its receipts and disbursements of all kinds.

"Sec. 10. He shall prepare an estimate of all the revenues and expenses and annually furnish same to the commissioners' court, which court shall carefully make a budget of all appropriations to be set aside for the various expenses of the county government in each branch and department. He shall open an account with each appropriation in said budget, and all warrants drawn against same shall be entered to said account. He shall carefully keep an oversight of same to see that the expenses of any department do not exceed said budget appropriation, and keep the commissioners' court advised of the condition of said appropriation accounts from time to time.

"Sec. 11. He shall make quarterly and annual reports to the commissioners' court, setting forth all the facts of interest, and showing the aggregate amounts received and disbursed out of each fund, the condition of each and every account on the books, the amount of bonded and other indebtedness of the county, together with such other information and suggestions as he may deem proper or the commissioners' court may require. This annual report shall be made to include all transactions during the year ending July 31st of each year, and shall be completed and filed at a special term of the commissioners' court in September.

"Sec. 12. All warrants on the county treasurer, except warrants for jury service, must be countersigned by the county auditor. He shall keep a register of all war-

rants issued by the judges or clerks on the county treasurer, and their dates of payment by the treasurer. In order that he may do so, the clerks of the county and district courts, or the judges thereof who are authorized to issue any warrant on the county treasurer, shall on forms prepared by the auditor daily furnish to the auditor an itemized report specifying the warrants that have been issued, their numbers, their several amounts, the names of the persons to whom payable, and for what purpose.

"Sec. 13. He shall carefully examine the quarterly report of the treasurer of all the disbursements, together with the canceled warrants which have been paid, and shall verify the same with the register of warrants issued as shown on the books of the auditor.

"Sec. 14. All deposits that are made in the county treasury shall be upon a deposit warrant issued by the county clerk in triplicate; said warrants shall authorize the treasurer to receive the amount named, for what purpose and to which fund the same shall be applied. The treasurer shall retain the original, the duplicate shall be signed and returned to the county clerk, and the triplicate signed and returned to the depositor. The auditor shall then enter same upon his books, charging the amounts to the county treasurer and crediting the party depositing same. The treasurer shall not, under any circumstances, receive any money in any other manner than that named herein.

"Sec. 15. All claims, bills and accounts against the county must be filed in ample time for the auditor to examine and approve same before the meetings of the commissioners' court, and no claim, bill or account shall be allowed or paid until same shall have been examined and approved by the county auditor. It shall be the duty of the auditor to examine and stamp his approval thereon. If deemed necessary, all such accounts must be verified by affidavit touching the correctness of same before some person authorized to administer oaths, and the auditor is hereby authorized to administer oaths.

"Sec. 16. Bids shall be hereafter asked for all supplies of stationery, books, blanks, records and all other supplies for the various officers for which the county is required to pay, and the purchase made from the lowest bidder, after filing said bid with the auditor for record.

"Sec. 17. He shall not audit or approve any claim against the county unless the same has been contracted as provided by law, nor any account for the purchase of supplies or material for the use of said county or any of its officers, unless, in addition to other requirements of law, there is attached thereto a requisition signed by the officer ordering same, and approved by the county judge, which said requisition must be made out and signed and approved in triplicate by the said officers, the triplicate to remain with the officer desiring the purchase, the duplicate to be filed with the county auditor, and the original to be delivered to the party from whom said purchase is to be made before any purchase shall be made. Supplies of every kind, road and bridge material, or any other material for the use of said county or any of its officers, departments or institutions, must be purchased on competitive bids, the contract to be awarded to the party who in the judgment of the commissioners' court, has submitted the lowest and best bid. It shall be the duty of the county auditor to advertise for a period of two weeks in at least one daily newspaper published and circulated in the county for such supplies and material according to specifications giving in detail what is needed. Such advertisement shall state where the specifications are to be found, and shall give time and place for receiving such bids. All such competitive bids shall be kept on file by the county auditor as a part of the records of his office and shall be subject to inspection by any one desiring to see them. Copies of all bids received shall be furnished by the county auditor to the county judge and to the commissioners' court, and when the bids received are not satisfactory to the said judge, or county commissioners, it shall be the duty of the county auditor to reject said bids and readvertise for new bids; provided that in cases of emergency, purchases not in excess of fifty dollars may be made upon requisition to be approved by the commissioners' court, without advertising for competitive bids.

"Sec. 18. The auditor may at any time appoint an assistant to act in his stead and who may discharge the duties of the auditor during his absence or unavoidable detention. Said appointment to be made with the consent of the county judge, who shall require said assistant to take the usual oath of office for faithful performance of duty.

"Sec. 19. Whenever an auditor appointed under the provisions of this act has been sufficiently proven guilty of official misconduct or has proven to be incompetent to faithfully discharge the duties required of him, he may, after due investigation by the same power which appointed him, be removed and his successor appointed as provided in section 3 of this act.

"Sec. 20. The provisions of this act are cumulative, and where conflicting with any existing law, this act is to be in force. Where the provisions of this act provide for like duties of the ones now required of the county clerk, this act is to prevail, and to such an extent only is the county clerk relieved of his duties. All other laws and parts of laws in conflict with this act are hereby repealed."

It is also proper to add that the first section of the law fixes the salary of the auditor at $2,400 per annum, to be paid by the coun-

ty. No one can read this law without reaching the conclusion that its object, purpose, and effect was and is to make important and material changes in reference to county affairs, even if the expression "county affairs" should be limited to the pecuniary interests of the county in its corporate capacity and as a political and legal entity. The sixth section makes the auditor the general inspector of the books and records of all county, district, and state officers, who are authorized or required by law to receive or collect any *money, funds, fees, or other property for the use of or belonging to the county.* The seventh section makes it his duty to take certain steps for the purpose of safeguarding *county funds* in the hands of the *county treasurer.* The eighth section requires him to prepare and prescribe forms to be used in the collection and disbursement of *county revenues, funds, fees, and all other moneys,* and the mode and manner of keeping and stating accounts by those who make such collections, and concludes by conferring upon him "the power to adopt and enforce such regulations, not inconsistent with the Constitution and laws, as he may deem essential to the speedy and proper collection, checking and accounting *of the revenues and other funds and fees belonging to the county.*"

The ninth section requires the auditor to keep an account with each of the persons named in the preceding section, and thereby relieve the county clerk of keeping the finance ledger previously required by law. In fact, every section of this statute as quoted above shows that it was the manifest purpose of the Legislature in enacting that law to better provide for the prompt collection, safe-keeping, and proper disbursement of county funds. The collection, safe-keeping, and disbursement of such funds is as much the affairs of counties as it is possible for anything to be; and, as the law quoted relates to and affects those matters, it is clearly and distinctly a law regulating the affairs of counties, but, being a general law, it is valid. According to the petition in this case, that law had been put into operation, and appellant had been appointed and was acting as auditor of Bell county when the Legislature passed and the Governor approved the act of April 1, 1909, undertaking to exempt that county from the operation of the statute quoted. As shown above, the law providing Bell county with an auditor is a general law regulating county affairs; and, having held that the subsequent statute attempting to remove Bell county from the operation of that law is a local and special law, the question remains: Does a mere exemption of a county from the operation of that law have the effect of regulating county affairs? And we think that question must be answered in the affirmative.

The word "regulating," as used in the Constitution, should not be given a narrow or technical signification. If the result of legislation is to repeal or materially change any law controlling or affecting the collection, safe-keeping, or disbursement of county funds, such legislation, within the purview of the Constitution, is a law regulating county affairs. If the act exempting Bell county from the statute requiring a county auditor is valid and enforced, then material changes in the county's affairs will necessarily result. In the first place, the county will save the expense of that office; in the second place, the books which the law requires the auditor to keep would be kept, if at all, by some other officer; and in the third place, many of the duties which the auditor is required to perform will not be performed by any one. Hence it is clear that while the exempting statute does not, in terms, declare that the changes referred to shall take place in Bell county, the effect of that law, if upheld, would necessarily produce such changes. So it appears to us as absolutely certain that the latter law is one which regulates the affairs of Bell county.

We have already given reasons for holding that it is a local or special law, and we now add that, as its sole object was to regulate the affairs of Bell County, that fact is conclusive proof that it is a special law. Bell county, as a municipal corporation, is, in the eyes of the law, a person or legal entity, and any statute whose main object is to regulate the rights or interests of a particular and designated person or thing, is, according to all the authorities, a special law. Therefore, upon the whole case, after due consideration, and with no desire to strike down legislation, we conclude that the statute which undertakes to exempt Bell county from the operation of the auditor statute is in violation of section 56 of article 3 of our state Constitution, and is therefore invalid. We have earnestly sought for, but failed to find, a way which would justify a different conclusion.

We note the contention of appellee's counsel to the effect that as the Legislature might, at the time of enacting the auditor's statute, have exempted Bell county from its operation, it had the power to do so at any subsequent time. We do not concede that such power of exemption existed at the time the original statute was enacted; and it would seem that as Bell county contains the requisite population, and therefore belongs to the class of counties for which an auditor was provided, if that county had by name been exempted from that law, such exemption would have rendered that statute a local or special law, and therefore unconstitutional. But, aside from that question, according to the appellant's petition, the auditor's statute had been put in force in Bell county, and appellant had been appointed and served as auditor up to the time of the passage of the exempting statute, after which the commissioners' court refused to recognize him as county auditor, and refused to pay his salary. This

being the situation, the enforcement of the exempting statute will produce an actual change in existing county affairs, which would not have been produced if the exemption had been incorporated in the original law.

In concluding this opinion, and for the benefit of those who may be interested in the validity of such legislation, we copy from appellant's brief the following list of authorities cited by his learned counsel, many of which have been examined and found to be pertinent and tending to sustain appellant's contention:

The act exempting Bell county is a local or special law: Maxwell v. Tillamook Co., 20 Or. 495, 26 Pac. 803; Miller v. Kister, 68 Cal. 142, 8 Pac. 813; Edmunds v. Herbrandson, 2 N. D. 270, 50 N. W. 970, 14 L. R. A. 725, Randolph v. Wood, 49 N. J. Law, 85, 7 Atl. 286; Van Giesen v. Inhabitants of Bloomfield, 47 N. J. Law, 442, 2 Atl. 249; Commonwealth v. Patton, 88 Pa. 258; State v. Hill, 147 Mo. 63, 47 S. W. 798; State v. Somers Point, 52 N. J. Law, 32, 18 Atl. 694, 6 L. R. A. 57; Davis v. Clark, 106 Pa. 377; Ross v. Winsor, 48 N. J. Law, 95, 2 Atl. 658; Clark v. City of Cape May, 50 N. J. Law, 558, 14 Atl. 581; State v. Boyd, 19 Nev. 43, 5 Pac. 735; Mathis v. Jones, 84 Ga. 804, 11 S. E. 1013; State v. Mayor of Newark, 53 N. J. Law, 4, 20 Atl. 886, 10 L. R. A. 700; Ex parte Jentzsch, 112 Cal. 468, 44 Pac. 803, 32 L. R. A. 664; Com'rs v. Rosche, 50 Ohio St. 103, 33 N. E. 408, 19 L. R. A. 584, 40 Am. St. Rep. 653; Loucks v. Bradshaw, 56 N. J. Law, 1, 27 Atl. 939; Pasadena v. Stimson, 91 Cal. 238, 27 Pac. 604; Morrison v. Bachert, 112 Pa. 322, 5 Atl. 739; In re Henneberger, 155 N. Y. 420, 50 N. E. 61, 42 L. R. A. 132; Manning v. Klippel, 9 Or. 367; Robinson v. Perry, 17 Kan. 248; Pope v. Phifer, 3 Heisk. 682; Darling v. Rodgers, 7 Kan. 592; Omnibus Ry. Co. v. Baldwin, 57 Cal. 160.

It regulates the affairs of Bell county: Morrison v. Bachert, supra; State v. Winsor, supra; State v. Hammer, 42 N. J. Law, 435; State v. Mayor of Newark, supra; Township of Lodi v. State, 51 N. J. Law, 402, 18 Atl. 749, 6 L. R. A. 56; Droege v. McInerney, 120 Ky. 796, 87 S. W. 1085; State v. Powers, 38 Ohio St. 54; Bingham v. City of Camden, 40 N. J. Law, 156; Pell v. City of Newark, 40 N. J. Law, 550.

Statutes in pari materia: State v. Mayor of Newark and Darling v. Rogers, supra.

As to classification of counties: Clark v. Finley; State v. Hammer; Van Giesen v. Inhabitants of Bloomfield, supra; Costello v. Village of Wyoming, 49 Ohio St. 202, 30 N. E. 613; Township of Lodi v. State; State v. Somers Point; Davis v. Clark; Miller v. Kister; Edmunds v. Herbrandson; State v. Winsor; Clark v. City of Cape May; State v. Wood; Commonwealth v. Patton; State

v. Bradshaw; Pasadena v. Stimson; and State v. McInerney, supra.

Classified for one purpose is not for all purposes: Pasadena v. Stimson, supra; Marsh v. Hanly, 111 Cal. 368, 43 Pac. 975.

No local or special law where general is applicable: State v. Hill, 147 Mo. 63, 47 S. W. 798; Ex parte Jentzsch; Pasadena v. Stimson; State v. McInerney, supra; Bloss v. Lewis, 109 Cal. 493, 41 Pac. 1081; State v. Granneman, 132 Mo. 326, 33 S. W. 784; Gray v. Crockett, 30 Kan. 138, 1 Pac. 50.

Validity a judicial question: Sutherland, Stat. Const. § 118; Clark v. Finley; Costello v. Village of Wyoming, and Edmunds v. Herbrandson, supra; Lloyd v. Smith, 4 Colo. App. 183, 35 Pac. 199; Appeal of Ayars (Pa.) 2 L. R. A. 577–583.

General law, if suspended, must be in whole: Cooley, Const. Lim. 482; Miller v. Kister, supra.

The judgment of the trial court is reversed, and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.