Calvo v. Westcott.                    *55 N. J. L.*

JOHN CALVO ET UX. v. J. LEIGHTON WESTCOTT, MAYOR
OF THE CITY OF CAMDEN.

1. Prior to the passage of the act of March 8th, 1892 (*Pamph. L., p.* 47),
police justices in cities whose population exceeded one hundred thous-
and were appointed by the governor. In all other cities they were
elected by local boards of city council. The act of 1892 applied only
to certain cities of the second class having a population of over fifty
thousand. *Held,* that this classification was substantial and not illu-
sory; that the effect of the law is to remove the cities selected from
the group next below them in population and to bring them into
harmony with those next above them, viz., cities of the first class.
The act, being general in its terms and application, is a constitutional
enactment.

2. The Classification act (*Pamph. L.* 1882, *p.* 47) is a rule of interpreta-
tion, and, apart from this, has no controlling effect upon either the
legislature or the courts. It is a mere formula by which to avoid the
repetition of words and numerals when legislating for or interpreting
enactments concerning municipalities. It may be ignored without
impairing legislation and its employment will not legitimize legisla-
tion otherwise vicious in a constitutional sense.

On *certiorari.*

Argued at June Term, 1892, before Justices VAN SYCKEL,
MAGIE and GARRISON.

For the prosecutors, *Edward Ambler Armstrong.*

For the respondent, *George M. Robeson.*

The opinion of the court was delivered by

GARRISON, J.    This *certiorari* questions the authority of
the mayor of the city of Camden to act as a committing mag-
istrate. It is conceded that under the city's charter such a
jurisdiction is in the mayor *ex officio,* unless it has been taken
away by an act of the legislature approved March 8th, 1892,
the full title of which is as follows : "An act concerning cer-
tain cities of the second class in this state and constituting a

Police Court in such cities and providing for the appointment of police justices of such courts, and defining the jurisdiction, powers and duties of such police justice and abolishing all other Police Courts, Recorder Courts and police justices in such cities." Section 4 of this act provides that the Police Court and police justice constituted thereunder shall take the place of and be in lieu of any and all other Police Courts or police justices or special justices in any such city, and all such offices are thereby terminated and ended upon the expiration of twenty days after the said act shall take effect. Section 11 also provides that immediately upon the expiration of twenty days after this act shall take effect the offices of all other police justices or special police justices "and all Police Courts in said city shall cease, determine and end, and that all of such officers and courts are hereby abolished and that thereafter no Police Court shall exist in said city except such as are provided for by this act." That these repealing clauses bear directly upon the two offices by virtue of which the mayor of the city of Camden previously exercised the function of a committing magistrate, appears to me to be free from all doubt. One of them, that of special police justice, it abolishes in terms. The other, that of judge of the Police Court, it reaches by necessary implication. This same question was before me recently upon *habeas corpus*, and the construction that I then put upon these acts still seems to me to be the correct one—an opinion in which I am the more assured because it was shortly afterward concurred in and followed by Mr. Justice Reed upon a like application. *Matter of Miles*, 15 *N. J. L. J.* 175. If, therefore, the act of 1892 is constitutional legislation, its effect is to abolish the power of the mayor *ex officio* to act as a committing magistrate. The first ground upon which the constitutionality of this statute is attacked is that its object is not expressed in its title. I am unable to see the slightest force in this contention. The title of an act has been held as aptly expressive of its object if it contain a mention of the subject-matter generally, together with a succinct indication of the legislation respecting

it. *Mortland* v. *Christian*, 23 *Vroom* 521. The title of the act before us, which I have given in full, mentions as its subject matter certain cities of the second class in this state, and indicates that the legislative object with respect to such cities is to constitute a Police Court therein and to define its functions and to abolish all other similar courts. I cannot see how a title can be more compendious or state with greater fairness the entire scope of an act.

The main contention, however, is that the act in question is within the constitutional interdict as being local and special. The act is peculiar in that it legislates not for cities of a given class, but only for certain cities of that class, viz., cities of the second class having a population of fifty thousand and over. It is insisted that, for this reason, it is a special law with respect to the internal affairs of the cities thus described.

The Classification act (*Pamph. L.* 1882, *p.* 47) is not, however, possessed of the efficacy thus ascribed to it. It is a mere formula, a convenient method by which to avoid the repetition of words and numerals when legislating for or interpreting enactments concerning municipalities. Beyond this it is incapable of exercising any controlling effect upon either the legislature or the courts. It does not extend the power of the one, nor limit that of the other; it may be ignored without impairing legislation, and its employment will not in the least degree tend to legitimize legislation otherwise vicious in a constitutional sense. The whole purpose of the Classification act is served when it has been read into the language of a given enactment. Thus interpreted, the act before us applies to all cities of this state having a population of between fifty and one hundred thousand. So that the question presented is whether the cities thus described, with respect to their population, constitute a class for the imposition of the scheme of police regulation created by the act. Population may be made the basis of classification in statutes relating to municipal bodies and their police and other internal powers. *Warner* v. *Hoagland*, 22 *Vroom* 62, 67; *In re Haynes*, 25 *Id.* 6; *Lewis* v. *Moore*, *Id.* 121. If the legislative object be

one for the imposition of which population affords a proper basis, an act is general without regard to the number of municipalities affected by it, or to the wisdom or unwisdom of applying its provisions to the class so selected. *Mortland v. Christian*, 23 *Vroom* 521, 537. The test of generality is that the law shall embrace all and exclude none whose conditions and wants render such legislation equally necessary and appropriate to them as a class. *Randolph* v. *Wood*, 20 *Vroom* 85. In applying these familiar rules to the case in hand we are guided as to the facts partly by those agreed upon in the state of the case and partly by certain general laws, of which judicial notice may be taken. From these sources it is to be gathered that prior to 1891 the situation of the cities of this state with respect to Police Courts was such that, in every city whose charter did not provide for a police magistrate, police justices were appointed by city council. The act of 1891 prohibited the appointment of police justices in excess of the ratio of one for every twenty thousand population, and did not extend to any city having less than nine thousand population. An earlier and unrepealed statute provided for police justices in all cities of the third and fourth classes, the appointment to be likewise by city council. Other acts concerned incidental matters, but did not change the general situation, which was that, in all cities of this state, police justices were recognized officers with substantially similar powers, the essential difference being in their mode of appointment, which in some instances was by election, as mayor, recorder or alderman, where such officers were *ex officio* special justices, while in all other cases the local council appointed directly to the office of police justice. Had this been the condition of legislation at the time of the passage of the act now before us, there would have been great force in the argument that the classification was illusory, in that it provided for an appointment by the executive in cities of from fifty to one hundred thousand, leaving both those having a greater and those having a less population subject to the local authorities. But in 1891 an act was passed which applied to cities of the first

class only, and hence included all cities of this state that had a population in excess of one hundred thousand. By the provisions of this act police justices clothed with powers substantially similar to those given by the act of 1892 were to be appointed by the governor. Now, the only distinguishing characteristic of cities of the first class is population in excess of one hundred thousand. So that the action of the legislature in transferring the appointing power of police justices or judges of Police Courts in such cities from the local elective body to the state executive, is to be sustained only upon the ground that mere excess of population may create a condition that renders it desirable that the appointment of those who are to administer criminal law in cities of such a population shall be removed from local influences. With the correctness of this opinion as a matter of policy we have nothing to do. It suffices for us that, assuming that certain abuses may grow out of mere excess of population, such excess of population affords a proper basis for legislation directed against such abuses. We note, therefore, as an essential element in the consideration of the constitutionality of the act of 1892, that prior to its passage the appointment of judges of Police Courts was in the hands of local authorities in all the cities of this state excepting those whose population exceeded one hundred thousand, and as to those cities the power of appointment had been transferred to the executive by a statute whose classification, based upon mere excess of population, has not been and, I think, cannot be successfully assailed. This being so, the effect of the act of 1892 was simply to extend the policy of the act of 1891 so as to include all the cities of the state having a population in excess of fifty thousand; in other words, to draw the line at fifty thousand instead of one hundred thousand. Prior to the passage of this act cities of from fifty thousand to one hundred thousand were under the same regulation as cities having a less population, and at variance to those having a greater. This act simply reverses this relationship, thereby bringing cities having a population in excess of fifty thousand into harmony with the more populous group,

and for that purpose removing them from the group of cities most of which they greatly outclass in population.

Deeming, as we do, that the acts of 1891 and 1892 dealt with a subject germane to population, how can we say that the legislation which draws the line at one hundred thousand is valid but that which extends it to fifty thousand is invalid? Nor does it militate against this classification that it does not include those cities in which the power of appointment was already vested in the governor, for a class is complete not only when it includes all the objects to which a common rule is to be applied, but when, as was said by Mr. Justice Knapp in the case before cited, " it embraces all and excludes none whose condition and wants render such legislation equally necessary and appropriate to them." In this aspect of the case there is no force in the insistment that the court must close its eyes to the fact that this statute brings cities affected by it into harmony with all those above them in population, because such a result does not appear on the face of the statute itself. We take judicial notice of general acts and of their effects; and, without touching the question as to how far such a result would justify legislation that was special in form, it is safe to say that no better criterion can be found by which to test a statute regulative of the internal affairs of cities, general upon its face, than that it combines generality in application with uniformity in result. The statute before us is possessed of both of these attributes. Its effect is, therefore, as we have seen, to abolish the office under color of which the defendant, as the mayor of the city of Camden, committed the prosecutors.

The commitment is set aside.