ATLANTIC COUNTY CIRCUIT COURT.

JOHN SBROLLA, COMPLAINANT, v. MARIA HESS,
DEFENDANT.

Decided July 16, 1945.

For the complainant, *Lloyd, Horn & Perskie* (by *David M. Perskie* and *John B. Baratta*).

For the defendant, *Martin Bloom*.

BURLING, C. C. J.  On June 5th, 1945, complainant commenced proceedings in the Atlantic City District Court to acquire possession of "house and accommodations and premises" situate and known as premises 108 North Annapolis

Avenue, in the City of Atlantic City, New Jersey, on the ground that the defendant, tenant in possession of the premises, held over and continued in possession thereof after the expiration of his term and after demand was made and written notice given by the landlord for delivery of possession of the premises to him. *R. S.* 2:58–17 (a); *N. J. S. A.* 2:58–17 (a). Prior to the return date of the summons to show cause why possession should not be delivered to complainant, an application was made by complainant, pursuant to *R. S.* 2:58–27; *N. J. S. A.* 2:58–27 (see, also, *R. S.* 2:32–274; *N. J. S. A.* 2:32–274) to the Honorable Frederic R. Colie, a Justice of the Supreme Court of New Jersey, for an order transferring the cause to the Atlantic County Circuit Court. On June 11th, 1945, an order was made by him transferring the cause to the Circuit Court of the County of Atlantic and in due season the appropriate papers were delivered to the clerk of the Atlantic County Circuit Court, thereby vesting that court with full and exclusive cognizance of the case. *R. S.* 2:58–27; *N. J. S. A.* 2:58–27.

Pursuant to the mandate of the statute (*R. S.* 2:58–28; *N. J. S. A.* 2:58–28) a *venire facias* was issued by the Atlantic County Circuit Court Judge returnable in one week. Prior to the return date of the *venire facias* as aforesaid, defendant moved to dismiss the affidavit and the cause of action based thereon upon the ground that the notice to terminate the tenancy set forth in the affidavit was not in accordance with the requirements of the statutes of the State of New Jersey, and that the Circuit Court was, therefore, without jurisdiction to entertain the proceeding. Prior to the return date of the motion, complainant filed a petition with the court setting forth in substance that in order to determine the question raised by the motion, to wit; the constitutionality of chapter 84 of the laws of 1945 (*R. S.* 46:8–11, *et seq.; N. J. S. A.* 46:8–11) it was necessary either to take depositions or to stipulate certain facts with regard to the method of enactment of the law, and with regard to the classification set forth in the seventh (seventeenth of the revision) section of the original act. The petition prayed for the right to stipulate or take depositions on the matters aforesaid and on other matters and also for a postponement pending the tak-

ing of the depositions, or the entering into of the stipulation, of the return date of the motion and of the trial. The trial was adjourned until July 16th, 1945, and the argument on defendant's motion was adjourned until June 29th, 1945. No testimony was taken and a stipulation has been entered into between the parties and filed with the court. The motion to dismiss the affidavit was argued and briefs submitted and decision reserved until the adjourned date of trial. The jury having been summoned in accordance with the *venire facias* and the cause coming on for trial in the presence of the parties and their attorneys to inquire into and try the proceedings for the possession of said premises, the defendant renewed his motion to strike out affidavit of the complainant and the cause of action upon the ground that it appears affirmatively on the face of said affidavit that notice to terminate the tenant's term was not given in accordance with the requirements of the law in such case made and provided and that therefore the court is without jurisdiction to act under said affidavit. The motion to dismiss the cause of action is predicated upon the admitted failure of the affidavit to allege notice in compliance with chapter 84 of the laws of 1945 (*R. S.* 46:8–11, *et seq.; N. J. S. A.* 46:8–11, *et seq.*). Complainant contends that compliance with this statute is unnecessary, since the statute is unconstitutional and therefore void. Thus, 'the issue as to the constitutionality of the act in question is now singularly before the court.

The complainant has abandoned any question as to the method of enactment of the legislation for the purpose of this proceeding only and as to the constitutionality of the statute in view of its title. Complainant relies in this proceeding upon the contentions that the statute violates article 4, section 7, paragraph 4 and article 4, section 7, paragraph 11 of the state constitution (*N. J. S. A.*) in that the act in question is special legislation and that the statute violates the obligation of contract and due process clauses of the federal and state constitutions, namely article 1, section 10, cl. 1 and the Fourteenth Amendment of the Constitution of the United States of America and article 1, paragraph 1 and article 4, section 7, paragraph 3 of the Constitution of the State of New Jersey in that:

a. It constitutes a deprivation of property without due process of law.

b. It constitutes an impairment of obligation of contract.

c. It denies to persons the equal protection of the laws.

d. It deprives parties of remedies for enforcing contracts which existed when the contracts were made.

e. It is not a lawful exercise of the police power since it is arbitrary, discriminatory and applies only to a portion of the public.

In approaching the question of the unconstitutionality of the statute, these formulas present themselves:

"It is the settled rule of judicial policy in this jurisdiction that a legislative enactment will not be declared void unless its repugnancy to the constitution is so manifest as to leave no room for reasonable doubt. The constitutional limitation upon the exercise of legislative power must be clear and imperative. This is a well defined limitation engrafted upon the function assumed by the courts, federal and state, to nullify a statute for unconstitutionality." *State* v. *Murzda* (*Court of Errors and Appeals,* 1935), 116 *N. J. L.* 219 (at *p.* 223); 183 *Atl. Rep.* 305 (at *p.* 307).

"To declare a statute unconstitutional is a judicial power to be delicately exercised. The exercise of that power has been entrusted to the courts. There it has been for generations and there it must remain until the people in a constitutional manner lodge it elsewhere. The responsibility must be fearlessly assumed." *Wilentz* v. *Hendrickson* (*Court of Chancery,* 1943), 133 *N. J. Eq.* 447 (at *p.* 487); 33 *Atl. Rep.* (*2d*) 366 (at *p.* 390).

The act (*Pamph. L.* 1945, *ch.* 84) contains the following preamble:

"Whereas, certain landlords have been and are taking undue advantage of the existing housing shortage which has created a serious emergency in certain cities of this state; and

"Whereas, the peace, welfare and morals of the general public is threatened to such an extent as to make necessary and advisable the passage of measures which shall tend to promote the general welfare by curbing oppressive actions of landlords who seek unduly to raise rents, profiteer in rents,

terminate tenancies for no valid cause and otherwise deprive their tenants of housing facilities; therefore,"

Sections 1 and 2 of the act are as follows:

"1. Except as herein otherwise provided, any tenancy for dwelling purposes now existing, whether under a lease, or from month to month, or otherwise, shall continue, notwithstanding the expiration of the tenancy by its terms, or by the service of a notice to end the tenancy by the landlord to the tenant, either prior or subsequent to the passage of this act; provided, the tenant is otherwise entitled to continue in possession, under the terms of the letting and shall continue to pay the rent as stipulated at the beginning of his tenancy."

"2. Any tenancy now existing and which shall continue under the provisions of this act, may be terminated by a landlord, who is also the owner of the demised premises, by a notice in writing to that effect, to the tenant, which shall be served upon the tenant not less than six months prior to the date of termination specified in the notice; provided, the owner and landlord, in good faith, desires the premises for actual use by himself and his family, for dwelling purposes, as his principal year around home and legal residence and is otherwise legally entitled to terminate the tenancy on the date specified for such termination."

The act makes it a misdemeanor to fail to make the limited use for one year of the premises after obtaining possession. Summer rentals are deleted from its effect and premises of sixteen rooms or more.

Section 7 is an important section in defining the limited operation of the act as follows.

"7. This act shall be inoperative except in cities bordering on the Atlantic ocean in counties of the fifth class having a population of less than one hundred fifty thousand according to the last Federal census."

The facts in paragraph 2 of the stipulation hereinbefore referred to are relevant and regardless of the stipulation are the subject of judicial notice, namely:

"2. There are two Fifth Class counties in the State of New Jersey: Atlantic County and Monmouth County, the County of Monmouth having a population of 161,238 as of the 1940 Federal census and the County of Atlantic having a popula-

tion of 124,066 as of the same census. There are four cities in Atlantic County bordering on the Atlantic Ocean, namely Brigantine, Atlantic City, Ventnor City and Margate."

It is a matter of such common knowledge as to require judicial notice (*James Mitchell, Inc.,* v. *Kreuger* (*Hudson County Circuit Court,* 1932), 10 *N. J. Mis. R.* 1176 (at *p.* 1179); 163 *Atl. Rep.* 10; *Wilentz* v. *Hendrickson,* 133 *N. J. Eq.* (at *p.* 485); 33 *Atl. Rep.* (2d) 366) that a general condition has existed of a shortage of housing accommodations due primarily to the embargo upon the use of critical materials and labor needed in the war effort which were normally available and required in the construction of housing facilities. This situation found recognition in the interest of national defense in federal legislation in the Emergency Price Control Act of 1942 (50 *U. S. C. A. Appendix,* §§ 901, *et seq.*) and regulations issued pursuant thereto. By stipulation of the parties, the following facts are admitted and now deemed relevant:

"1. Pursuant to the authority conferred under 50 *U. S. C. A. Appendix, Section* 902 (b) and (c) the Price Administrator of the United States Government appointed under the Emergency Price Control Act, has issued declarations setting forth the necessity for the stabilization or reduction of rents for housing accommodations in every county of the State of New Jersey, pursuant to the same statutory authority the Price Administrator has issued regulations effective in every County of the State of New Jersey on the following dates:

| Counties | Date of Rent Control Regulations | |
| --- | --- | --- |
| Burlington, Camden, Gloucester, Bergen, Essex, Hudson, Middlesex, Monmouth, Morris, Passaic, Somerset, Union | July | 1, 1942 |
| Sussex | August | 1, 1942 |
| Warren | September | 1, 1942 |
| Salem, Hunterdon, Mercer | November | 1, 1942 |
| Cape May, Cumberland | December | 1, 1942 |
| Atlantic | June | 1, 1944 |
| Ocean | April | 1, 1945 |

"The regulations issued by the Price Administrator which are effective in every county in the State of New Jersey established maximum rent dates in each county, the said maximum rent dates being either March 1st, 1942, September 1st, 1943, or February 1st, 1944. There is attached hereto and by this reference made a part hereof, the Housing Regulations for all defense rental areas, and the parties hereto agree that the provisions contained in the said regulations are in force and effect in each county of the State of New Jersey."

The attack by the complainant upon the act divides itself into two categories:

## I.

That it violates article 4, section 7, paragraph 4 of the Constitution of the State of New Jersey, the pertinent part of which paragraph is: "No general law shall embrace any provision of a private, special or local character," and article 4, section 7, paragraph 11 of the Constitution of the State of New Jersey, the pertinent part of which paragraph is: "The legislature shall pass general laws providing for the cases enumerated in this paragraph, and for all other cases which, in its judgment, may be provided for by general laws."

By application of the formula of classification, the only municipalities in the State of New Jersey in which the act by its terms is operative are the cities of Atlantic City, Ventnor, Margate and Brigantine, in the County of Atlantic.

That the legislature dealt with the legislation as being general in nature is obvious by the admitted non-compliance with article 4, section 7, paragraph 9, providing for public notice of intention of application for a special or local bill.

There have been a large number of decisions upon the subject of classification in our state.

One of the leading cases is *Budd* v. *Hancock* (*Supreme Court,* 1901), 66 *N. J. L.* 133 (at *p.* 135) ; 48 *Atl. Rep.* 1023 (at *p.* 1024), wherein it was held:

"A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes.

It is not, therefore, what a law includes that makes it special, but what it excludes. If nothing be excluded that should be contained the law is general."

And in another leading case, *Burlington* v. *Pennsylvania Railroad* (*Court of Errors and Appeals*, 1928), 104 *N. J. L.* 649 (at *p.* 654) ; 142 *Atl. Rep.* 23 (at *p.* 25), it was held:

"A law is not objectionable on the ground that in its operation it is confined to certain localities if it does not exclude from its sway or effect any place or subject belonging to the class to which it relates. *Van Riper* v. *Parsons*, 40 *N. J. L.* 1.

"If the legislative object be one for the imposition of which population affords a proper basis, an act is general without regard to the number of municipalities affected by it, or to the wisdom or unwisdom of applying its provisions to the classes selected. *Calvo* v. *Westcott*, 55 *N. J. L.* 78; 25 *Atl. Rep.* 269, citing *Mortland* v. *Christian*, 52 *N. J. L.* 521, 537; 20 *Atl. Rep.* 673; *Randolph* v. *Wood*, 49 *N. J. L.* 85; 7 *Atl. Rep.* 286.

"A law, to be general, must operate equally upon all of a group of objects which, having regard to the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves. *Central Railroad Co.* v. *State Board of Assessors*, 75 *N. J. L.* 771, 786; 69 *Atl. Rep.* 239."

And in one of the early leading cases, *Van Riper* v. *Parsons* (*Supreme Court*, 1878), 40 *N. J. L.* 1 (at *pp.* 8, 9), it was held:

"My theory is, that if a set of objects be fairly classified, a law embracing them will be a general one, and in all respects unobjectionable; but undoubtedly, if the classification be illusive, being contrived with a view of escaping the constitutional restriction, it can lend no support to the legislation connected with it. * * * Interdicted local and special laws are all those that rest on a false or deficient classification; their vice is that they do not embrace all the class to which they are naturally related; *they create preference and establish inequalities;* they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects." (Italics supplied.)

With the law as hereinabove set forth in view, we consider the enactment in question. Its preamble recites that landlords have been and are taking undue advantage of the existing housing shortage which has created a serious emergency in certain cities of this state and further that the general public is threatened to such an extent as to make necessary and advisable the passage of measures which shall tend to promote the general welfare by curbing oppressive actions of landlords who seek unduly to raise rents, profiteer in rents, terminate tenancies for no valid cause and otherwise deprive their tenants of housing facilities.

The wisdom of the act is for the legislative branch but it cannot be contended that such emergency exists only in cities bordering on the Atlantic Ocean in counties of the fifth class having a population of less than 150,000 according to the last federal census; that the emergency exists only in Brigantine, a city having no manufacturing work and having one of the smallest populations of any city in the state; that this emergency exists only in the seaside municipalities of Atlantic City, Margate and Ventnor whose chief occupation is catering to visitors that the emergency is any less in large industrial areas in the northern, central and western part of New Jersey, or that the landlords in all areas of New Jersey, with the exception of these four municipalities, act differently than the landlords in those four municipalities. No one would contend that the welfare and morals of the general public of the state are affected by the action of landlords alone in the municipalities of Brigantine, Atlantic City, Ventnor and Margate. The Office of Price Administration has promulgated regulations limiting the rights of landlords due to a national emergency which are in effect in every county of the state.

The defendant submitted that there exists in the instant case "some characteristic or peculiarity that distinguishes it from those places excluded; that is that the four cities in question are resorts, and are adjacent to large cities, which frequent these resorts, and as a result of which an unusual condition has been created. Residents of large cities have in great numbers been purchasing homes in these cities and have been dispossessing the occupants of these homes. This condi--

tion is one that is peculiar to the four cities and does not apply to other parts of the State of New Jersey."

Even these characteristics are not peculiar to the four municipalities particularly affected by this act. Assuming the allegation to be a fact, it is common knowledge there exists possessors of surplus cash who seek investment and ownership in real estate not particularly local to these municipalities nor particularly local to them as resort municipalities. Other resorts and municipalities of the State of New Jersey have felt the effect of the added influx of people and the impetus toward real estate ownership.

Under the federal statutes and its incident regulations landlords in all parts of the State of New Jersey are presently on an equal footing. Making due allowance for the quartering of soldiers and housing demands incidental thereto, the demand for housing in Brigantine, Atlantic City, Ventnor and Margate, which have no war industries, is no greater than the demand for housing in various metropolitan districts throughout the state in which defense plants and factories are working on two and three shifts a day. The conditions and wants of areas other than those mentioned in this act with regard to housing and housing facilities render the legislation equally appropriate to such areas.

The distinctions are not substantial but illusory. The test of the generality of a law that it shall embrace all and exclude none whose conditions and wants render such legislation equally appropriate to them as a class has not been met and by this test, the act is a special and local one and is discriminatory and unconstitutional.

## II.

The act is further vulnerable to attack as raised in the second category of grounds. Complainant asserts that it violates the obligation of contract and the due process clauses of the federal and state constitutions (article 1, section 10, cl. 1, Fourteenth Amendment of the Constitution of the United States and article 1, paragraph 1 and article 4, section 7, paragraph 3 of the Constitution of the State of New Jersey). The pertinent provisions of each are as follows:

United States Constitution: "Art. 1, Section 10, cl. 1 * * * No State shall * * * pass any Bill of Attainder, *ex post facto* Law, or Law impairing the obligation of Contracts, or grant any Title of Nobility."

Amendment: "Art. XIV, Sec. 1 * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

New Jersey Constitution: "Art. 1. Rights and Privileges. 1. * * * All men are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."

"Art. IV, Sec. 7. 3. * * * The legislature shall not pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made."

By chapter 84 of the New Jersey Laws of 1945, effective April 4th, 1945, the legislature undertook to extend every tenancy "now existing" for dwelling purposes, involving premises containing less than sixteen rooms, in four cities of this state, namely, Atlantic City, Brigantine, Margate City and Ventnor, for a period of two years and three months from the effective date of the act. The act required of the tenant only that he continue payment of rent "as stipulated at the beginning of the tenancy" and that he be "otherwise entitled to continue in possession."

The only exception to the rule established by the legislature was that it permitted the termination of such tenancies where the following three conditions should *all* concur, to wit:

(1) That the landlord, being also the owner of the demised premises should serve a notice in writing upon the tenant effective not less than six months prior to the date of termination specified in the notice; *and*

(2) That the owner-landlord should in good faith desire the premises "for actual use by himself and his family for

dwelling purposes as his principal year around home and legal residence;" and

(3) That the owner-landlord should be otherwise legally entitled to terminate the tenancy on the date specified for such termination.

The period of two years and three months hereinbefore mentioned is fixed by that provision of the act which continues its effectiveness until July 4th, 1947.

Since a great many landlords cannot possibly comply with the conditions that would bring them within the exception above mentioned (for example, a corporation landlord-owner could never so comply) this act means that the rights of many tenants to remain in possession of leased premises are arbitrarily extended for the period mentioned at the then existing rent "as stipulated *at the beginning of the tenancy,*" whether or not the landlord is agreeable to such extension, whether or not the alleged emergency described in the preamble of the act shall continue to exist during said period of two years and three months and whether or not the rent stipulated at the beginning of the tenant's tenancy should in the light of subsequent development be a "reasonable" or an "unreasonable" one.

At the argument of this motion, both parties admitted that there was factual justification for the declaration by the legislature of the emergency situation. While the court is not bound to accept the determination of the legislature, it must however give considerable weight to the determination of the legislature that such an emergency in fact existed especially where the facts supporting it are in evidence and matters of common knowledge and observation. Although the act does not by its term limit its operation during a period of existing emergency, still the fair inference from the fact that it is of a limited duration is that the legislature estimated the period and in any event should the emergency cease within the period, the court may at such time so declare and the occasion for the exercise of unusual power falls. *Hourigan* v. *North Bergen Township* (*Court of Errors and Appeals,* 1934), 113 *N. J. L.* 143 (at *p.* 151) ; 172 *Atl. Rep.* 193, 785.

The defendant admits that the act impairs the obligation of contract and the due process constitutional provisions under

ordinary circumstances but asserts that such rights are made subject to the exercise of the police power by the state when otherwise justified and asserts that under the existing circumstances the police power has been validly exercised and that such valid exercise nullifies the effect of such violation during the exigency.

Although an emergency does not increase constitutional power nor diminish constitutional restrictions, it may furnish the occasion for the exercise of power possessed. *Home Building and Loan Association* v. *Blaisdell* (1934), 290 *U. S.* 398 (at *p.* 425); 54 *S. Ct.* 231. And at page 440 of 290 (*N. S.*), at page 241 of 54 *S. Ct.*, it was held:

"Whatever doubt there may have been that the protective power of the state, its police power, may be exercised—without violating the true intent of the provision of the federal constitution—in directly preventing the immediate and literal enforcement of contractual obligations, by a temporary and conditional restraint, where vital public interest would otherwise suffer, was removed by our decisions relating to the enforcement of provisions of leases during a period of scarcity of housing. *Block* v. *Hirsh*, 256 *U. S.* 135; 41 *S. Ct.* 458; *Marcus Browning Holding Co.* v. *Feldman*, 256 *U. S.* 170; 41 *S. Ct.* 465; *Edgar A. Levy Leasing Co.* v. *Siegel*, 258 *U. S.* 242; 42 *S. Ct.* 289."

In a recent New Jersey case, *Bucsie* v. *Longworth Building and Loan Association* (*Court of Errors and Appeals*, 1937), 119 *N. J. L.* 120 (at *p.* 123); 194 *Atl. Rep.* 857, 860, it was held:

"It is well settled, however, that the constitutional interdiction against statutes impairing the obligation of contracts does not prevent the state from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into may thereby be affected. *Home Building and Loan Association* v. *Blaisdell, supra,* 290 *U. S.* (at *p.* 437); 54 *S. Ct.* 231; *Manigault* v. *Springs,* 199 *U. S.* 473; 26 *S. Ct.* 127; 50 *L. Ed.* 274. *But the exercise of such powers is subject to the limitation that it must be reasonable under the conditions* and the legislation must have substantial relation to its object *and must not be arbitrary or discriminatory.*

*Wolf Packing Co.* v. *Court of Industrial Relations,* 262 *U. S.* 522, 535; 43 *S. Ct.* 630, 632; 67 *L. Ed.* 1103; *Nebbia* v. *New York,* 291 *U. S.* 502 (at *p.* 535); 54 *S. Ct.* 505; 78 *L. Ed.* 940." (Italics supplied.)

In 2 *Cooley on Constitutional Limitations* (*8th ed.*) 1128, is set forth:

"'The exercise of the power for the public welfare may inconvenience individuals, increase their labor and decrease the value of their property. It is a matter resting in the discretion of the legislature and the courts will not interfere therewith except where the regulations adopted are arbitrary, oppressive or unreasonable.

"'The wisdom or expediency cannot be subjected to judicial review. But the power is subject to the limitations imposed by the Federal and State Constitutions upon every power of government and it will not be suffered to invade or impair the fundamental liberties of the citizens."

It is not for the court to pass upon the wisdom of the act, that is for the legislative branch, but assuming the facts warrant the declaration of the emergency, the action is not to be unbridled and unfettered but is circumscribed with certain limitations. Thus as to the legislation in question, it would seem to leave open to determination the question whether the exercise of the power is arbitrary, discriminatory, oppressive or unreasonable.

The Emergency Act of the United States Government hereinbefore referred to and known as the Emergency Price Control Act of 1942 and its incident regulations has manifold provisions therein set forth for the protection and benefit of landlords, one of which is to fix rents which are generally fair and equitable.

Two of the leading cases relating to the subject of housing conditions under exigencies were: *Block* v. *Hirsh,* 256 *U. S.* 135; 41 *S. Ct.* 458, and *Marcus Brown Co.* v. *Feldman,* 256 *U. S.* 170; 41 *S. Ct.* 465. In the first case there was a review of legislation of Congress affecting the District of Columbia and in the second case of legislation of the State of New York. In these Housing Acts machinery was provided to secure the landlord a reasonable rent. *Block* v. *Hirsh, supra* 256 *U. S.* (at *p.* 157); 41 *S. Ct.* 458.

In the act, there is no safe guard to fix rents which are generally fair and reasonable. Since the measure of rent is that "as stipulated at the beginning of his tenancy" the landlord may be deprived of his property during the duration of the act and at the same time have to meet increased cost of taxes and maintenance. For instance the rates of municipal taxes for 1945 in the cities of Atlantic City, Margate and Ventnor show an increase over the year 1944.

In relation to the second category of the attack, the act is an invalid exercise of the police power in that the means adopted are discriminatory, oppressive and unreasonable, in that they provide no formula, safeguard or machinery to fix rents which are generally fair and equitable during the exigency.

In the language of Mr. Justice Perskie in the case of *Wilentz* v. *Hendrickson* (*Court of Errors and Appeals,* 1944), 135 *N. J. Eq.* 244 (at *p.* 251); 38 *Atl. Rep.* (*2d*) 199:

"Thus in the exercise of our undisputed right, historically imbedded in our jurisprudence to declare a statute unconstitutional and with proper regard for the self imposed limitations looking toward favoring the constitutionality of legislation, and deeply sensible of the respect and regard which we entertain for our co-ordinate branches of our government, we find that we entertain no doubt as to the constitutionality of the challenged statutes."

### Conclusion.

The act is unconstitutional. The motion is denied.